Good morning, Your Honors, and may it please the Court, Ian Gershengorn on behalf of Defendant Appellant PeopleConnect. I'd like to reserve three minutes for rebuttal. I want to start by making two overarching summary points, one on arbitration and one on Section 230. On arbitration, first, in Napke, this Court vacated the District Court's decision denying arbitration because the District Court accepted plaintiff's version of the facts while denying discovery and then faulting us for lacking the necessary evidence. This case involves the same District Court judge making the same error. We were denied discovery and thus we can't be faulted for lacking the evidence we need to show why arbitration is appropriate. That said, in truth, this case is even easier because even under plaintiff's version of events, under plaintiff's version of the facts, our success is clear. Under Mr. Osborne's own version of events, he created an account for Mr. Boshears in 2021 and did so as Mr. Boshears' attorney. Because neither Mr. Osborne nor Mr. Boshears opted out of the account in the manner specified by the terms of service, Mr. Boshears is bound to arbitrate. If the Court has any doubts on the arbitration score, second, it should hold that plaintiff's claims are barred by Section 230. Plaintiff's claims that Section 230 doesn't apply. Now, pardon me, counsel. You're going very quickly. I'm sorry. I'd like to pull you back a moment. Sure. You said that Osborne created the account for Boshears. What's the record evidence of that? So, Your Honor, what Mr. — well, first of all, Your Honor, I'd like to make an overarching point and then respond directly to Your Honor's question. The record is a little deficient because we have not been entitled to discovery yet. So that's our sort of main submission. But with respect to Your Honor's question — So you claim that Mr. Osborne created an account for Boshears, and you claim that if you were allowed to do discovery, you could prove that. So, Your Honor — But it's not quite accurate to say that Osborne created the account for Boshears on the record as it stands now. So, Your Honor, the thing I would point to is that — Is that correct? Am I wrong? So I think you're not quite right, but if I could at least make the argument of why. If you look at ER 240, Your Honor, which is Mr. Osborne's declaration, he says, I created an account on Classmates.com using the email address LoboInvestigation at Yahoo, which I'll call the Lobo account, and I gathered screenshots and photographs that appear in the complaint, meaning Mr. Boshears' complaint, using this account. And then he says, within 30 days of creating the account, I sent a letter opting out of arbitration, and he did that both on behalf of himself and on behalf of anyone who he represents. And so I do think, since he created that account — He didn't mention Mr. Boshears in the opt-out, did he? No, Your Honor, that's — He mentioned himself. No, no. Well, so what he said was, I opt out — so, two points, Your Honor. He says I — he purported to opt out on behalf of himself and anyone he represents. Okay? So that's what he purported to do. Where is the evidence that he represented Boshears at that time? So, I think that's what he says, but I think Your Honor is right. At core, we don't know that, and so we're entitled to discovery to prove it. Okay. But I do think that Mr. Osborne will tell you that he actually was representing. We don't have to accept that, but even accepting that — I mean, what Mr. Osborne says is, on the 28th, I did the search, October 28, 2021. On October 29, 2021, I filed a complaint on behalf of Mr. Boshears. Your friend is actually making a sort of flipside argument to yours. We've already told you all the information you need in our declaration, so why do you need discovery? Right. So, Your Honor, we are entitled — so, there is a declaration. We're entitled to win under his version of the facts. If, in fact, that's not sufficient, then we're entitled under NAPI and under sort of basic law of, you know, the basic — as the court said in NAPI, this follows the regular trial process. You make a motion to dismiss. That's the equivalent of the motion to compel. If that's denied, you're entitled to discovery. You get discovery. You then move for summary judgment. And then, if that fails, you have a mini-trial. And so, what the district court did here was cut that off, just as the district court had done in NAPI, and this decision here in Boshears preceded NAPI, so she didn't have the benefit of NAPI's wisdom. And therefore, we go back. I just do want to say, though, that I do think — and, you know, obviously, we happily accept the readout, but a way to think about this case is that Mr. Osborne, when he created the Lobo account to search on behalf of Mr. Boshears, accepted the terms of service on behalf of Mr. Boshears, and that Mr. Boshears is therefore bound unless there was a valid opt-out, and there was no valid opt-out here. So that's how we see the case, and we think it's very straightforward, you know, under Mr. Osborne's version of events. But, again, to the extent the court has any doubt about that, then, at the very least, under NAPI, we get the remand. You know, I did want to address the court's question. The court had asked the parties to be prepared to answer the question about the opt-out notice. You know, I do think that the opt-out notice here is, you know, it gives the opportunity if an account is created on behalf of Mr. Boshears, that he then is bound by the terms of service, including the arbitration provision, unless he opts out. He has had 30 days to opt out, and he didn't do so. So we think that he is bound. But the arbitration provision, the opt-out provision, I think, is essential to show why a number of the parade of horribles that plaintiff's attorney set forth just doesn't apply. You have the right to opt out. You just have to do so. So, anyways, I do think under NAPI, you know, as I say, I think. Why isn't the opt-out notice valid as to Boshears? So the opt-out notice isn't valid as to Boshears because, Your Honor, it didn't follow the procedures in the terms of service. Those are set forth in the contract. What term did it follow? It did not provide, and this is at ER 355 under 12D, it didn't provide name, address, and email address and phone number, and it didn't have a signature from Mr. Boshears on it. So that's set forth in the ER at 355 12D. And so we think with that, you know, this is covered. But just to put the final point on it, which I've said several times, but just to be crystal clear, even if you disagree with all of that, like the things that we don't know when the agency relationship began, whether Mr. Boshears has ever logged on on his own or used the system, whether Mr. Osborne used different accounts than the Lobo account for Mr. Boshears, whether other attorneys retained by Boshears or related to Osborne accessed the account. We don't know any of those things because we haven't had discovery, and as this Court said in NAPI, we're entitled to probe the contours and limits of the attorney-client relationship and get facts and knowledge that we need to make our claims. And just to put the final point on it, you'll see over and again in plaintiff's brief, these facts are undisputed, and then list a bunch of facts. Well, of course, they're only undisputed in the narrow sense that we haven't been given the opportunity to have discovery to dispute them, so we assume them as true in the motion to dismiss. We think it's sufficient for us to win if the Court disagrees, then we get discovery. I did want to take a moment to pivot to the Section 2 arguments if the Court were to disagree with us on the arbitration. I think there are two main arguments that the plaintiffs have made as to why Section 230 doesn't apply. First, they contend that Section 230 doesn't apply to our advertisements, but displaying advertisements that make no reference to all plaintiffs in response to user search inquiries, that's what Google does every day, and that is at the heartland of Section 230. And so that's sort of the first overarching point. And then the second point is they contend no immunity applies because the original yearbook publishers didn't themselves provide the yearbooks to classmates.com, in fact, others did. But under that theory, a website like Facebook would be liable whenever a user posts content she didn't author, such as a poem, song lyrics, these very pages from the yearbook, or really any historical material at all. And so that can't be correct. And so because of that, we think that Section 230 applies. And then the final point I'll make on this is just to sort of try to hammer home the advertisements point, and this is at paragraphs 31 to 33 of the complaint, at ER 351 and ER 352, this is where the complaint walks through the advertisements. And I think what's critical here is for the court to recognize that the core advertisement that's being challenged, which is at paragraph 33 and is reproduced in the appendix, uses absolutely no information from plaintiffs. The way the process works is low-resolution yearbook pictures are presented. If somebody clicks on one of the photographs, they're asked to join for free to register. If they do that free registration, then information from that free registration is taken. So if I were to do it, it would say, you know, thanks Ian, keep in touch with your Roxbury Latin friends, would you like to upgrade? It doesn't have anything to do with the image that was produced. We think that that pairing of advertisement and user search, which again is the kind of thing Google does every day, is protected under 230. And so if the court were to rule against us on the arbitration point, we would urge the court to exercise its jurisdiction and decide the section 230 argument. If the court has no questions, I will reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. My name is Benjamin Osborne on behalf of the plaintiff, Mr. John Boshears. Would you get closer to the microphone, Mr. Osborne? Sure thing. How's that? Much better, if you want to be heard.    When people connect, people connect. When people connect, people connect. which owns and operates the website Classmates.com, uses my client's photograph as a child to advertise subscriptions to that website. That's why we're here today. Now, no one disputes that my client, Mr. Boshears, has never visited Classmates.com, has never manifested consent to the use of his photograph in any way, and has never seen the terms and conditions that People Connect is attempting to impose against him. That's point one. Point two, this court has already decided a nearly identical case, in a case called Callahan v. People Connect that was decided a year ago. You won't see it cited anywhere in People Connect's briefing. But it was essentially the same theory. In fact, the theory here is even weaker than the theory that was at issue in People Connect v. Callahan. This court's already decided that an attorney investigating a claim on behalf of a client, that that's why I created the website, that does not bind that client to the terms and conditions. So, counsel, I know you're familiar, as I am, with the Napki case. Yes. So how do you distinguish Napki's requirement in what I look at as virtually identical circumstances that discovery is required? Because the information that was required in Napki to be filled in has already been filled in on the record here. Filled in on the record from your declarations, or declaration, and the evidence that you claim is undisputed? From a declaration I submitted, from the fact that the complaint was filed, and from a letter that was sent that's in the record that People Connect does not dispute it received. But how can it be that they don't get a chance to have discovery which might show that that is not accurate, or there's another side to the story, or there's other evidence out there? How can one side saying this is all the evidence there is end their right to get discovery? Because the legal theory that they articulated would not work even if everything that they articulated were true. Is it clear from the record whether your client has accounts with any other People Connect services as defined in their terms of service? It is not. That information is not in the record. That is correct. But let's look at the theory they articulated. So I want to make very clear that the theory counsel just articulated is not the theory that they advocated to the district court. He talked to you about an account I created in 2021. Look at what they argued before the district court. He said nothing about that. Their theory before the district court was an account I created in 2019 is what binds Mr. Boshears. Now, I created that account in 2019, two years before I even met Mr. Boshears. They're shifting their theory on the fly here. It's not in their briefing. What they said before the district court and in their opening brief was that the account I created in 2019 is the one that my client impliedly ratified two years later when I visited the website to investigate his claim. For that theory to work, they have to meet the requirements of implied ratification. They were alleging that a contract existed that I created in 2019. That was their theory. That was their original theory. And the theory that it was a contract created in 2021 is what I'm hearing for the first time, and you're hearing for the first time today. Their original theory, the one the district court correctly rejected, is that when I created an account in 2019 in my personal capacity, that therefore bound all of my subsequent clients to my own agreement to the terms of service. And that's wrong. Why do we know that? Because they are alleging a theory of implied ratification. The requirements for implied ratification are clear, and they fail at least four of those requirements, all of which are articulated in our brief. So in order for... Are you saying that they forfeited the argument that the 2021 account that you opened was done on behalf of brochures? I'm saying that's not the argument on appeal. Of course they forfeited that argument because they're appealing the district court's judgment. The district court's ruling was, hey, the theory that you brought to me, even if all the facts that you're claiming are true are true, would not work to compel the client to arbitrate. Your position is that the defendant did not argue the 2021 account as being the account opening by brochures? That is correct. They argued that the reason Mr. Boucher's was bound to the terms of service was because I created an account in August of 2019. That is the argument you will see in their opening brief. That's the argument they made before the district court. It's a completely novel move they're making here to claim that it was an account creation in 2021. And they're probably doing so because they understand that the implied ratification theory does not work if it's based on the August 2019 account, and that is the only argument they made before the district court. Let's talk about why that August 2019 theory doesn't work. First, for implied ratification to exist, the agent must have been acting, quote, for and in the name of the principal at the time that account was created. There is nothing in the record to indicate that I, when I created an account in August 2019, did so on behalf of Mr. Boucher's. Now, they claim in their brief that when I created the August 2019 account, I did so to investigate claims. That's false, and there's nothing in the record to support it. How could they have information in the record to support it without discovery? To support that I created an account in 2019 on behalf of a client that, as is in the record, I didn't even start representing until two years later? As in the record from what the evidence that you put in. Correct. That's correct. But let's step aside then, right? So implied ratification requires that I, at the time I entered the contract in 2019, indicated that I was doing so on behalf of a client. I have to have given them some information that made them suspect I was doing so on behalf of Mr. Boucher's. There is no such information. Had I done so, that information would be in PeopleConnect's possession. There'd be no need for discovery. They would have presented it in their motion. It doesn't exist. Right? How can they know that without discovery again? Because for implied ratification to exist, the agent, that's me, has to, at the time of entering the agreement, indicate that I am doing so on behalf of the principal. And you say you didn't even know brochures in 2019. It's not what I say. It's what I demonstrated. Do they have... If I had signed a contract and said, I am doing so on behalf of John Boucher's, and John Boucher's later ratified that agreement, that would meet the requirements for implied ratification. Right? But if that were true, they would have come up with the agreement where I wrote, I'm doing this on behalf of someone else. Well, they have two arrows in their quiver. One, that you were acting on behalf of Boucher's, and they've been stopped from discovering that. And two, that Boucher's ratified. So, as to the first arrow, why can't they say, we need discovery to find out whether you were acting for Boucher's in 2021? Your Honor, that's incorrect. Their briefing articulates one theory. And their motion before the district court articulated one theory, and it's implied ratification. That is the only theory that is on it. And the district court said, nor do any facts suggest that Boucher's had any knowledge, let alone full knowledge, that his counsel ever agreed to arbitrate claims related to his use of the classmates' website. That is correct. That is the second reason why their theory fails. And how were they supposed to get that evidence without discovery? It was impossible that my client would have had full knowledge of the material facts, right, of an agreement that was entered into 2019, two years before I even met him, right? And let's go back to the first reason why the implied ratification theory doesn't work. Even if my client had all full knowledge, even if they were to get evidence that my client had full knowledge, the theory would still fail because, again, they have to have a reasonable belief at the time I entered the contract that I was doing so on behalf of a principal. Otherwise, implied ratification doesn't work. It's black-letter law. That's from Guide 1 in Indiana, which they cite in their briefs. Now, there's a third reason why the implied ratification theory won't work, even if they get evidence. A principal may be bound by implied ratification only if he fails to object to or repudiate the contract within a reasonable time after the alleged ratification. They allege that Mr. Boshears ratified on October 28th. On that very same day, I sent a letter repudiating that supposed ratification. And the day after, I filed a complaint on behalf of Mr. Boshears, which Mr. Boshears reviewed and agreed to, in which he repudiated the agreement, right? So this opt-out story is a red herring. It doesn't matter whether I was effective in opting out. The question is whether the October 28th letter effectuated a repudiation. And that's another key difference between this case and Napke. In Napke, the judge specifically noted that there was no evidence that Napke had repudiated the agreement. Here, it's in the record. He repudiated twice, on October 28th and October 29th. And fourth, for implied ratification to exist, the principal must have taken actions that give rise to a reasonable belief on the part of the counterparty that the principal intended to be bound, right? This is back to the point that for implied ratification to work, right? For me, as an agent, to enter into a contract on behalf of a principal who later ratifies it, I had to give some indication at the time that I entered the contract that I was intending to do so on behalf of my client. When I made the August 2019 account, there was no indication, right? And they don't need discovery to show that because if I'd given the indication, it would be in their possession. Let's think about the consequences of PeopleConnect's absurd theory were true, right? I created an account in 2019 for my own personal use, right? And their position now is it is impossible for me to investigate their website without thereby binding all of my clients to arbitration. If that were true, it would insulate every Internet company in this country from being in the courts because there's no legal team on the planet that hasn't used Apple or Google or related services, right? Their theory, were it true, would lead to a world where Apple can never be sued in court because someone on its legal team agreed to the terms of service on their own behalf. And now they've implied apparently by implied ratification. But even if the rest of your argument is correct, there could be an opt-out which would defeat that, wouldn't there? Or am I missing something there? Why would... You are missing something, respectfully. Respectfully. No, that's fine. I'm asking you to tell me because you say that there would be no way they could go to court. I've used Apple. Did I opt out of the terms of service when I signed up for an account? No, of course not, right? Because I had no idea that I would later be investigating that website for the purpose of investigating a client's claim, right? So that I had the option to opt out at the time I created the account doesn't do anything to change the status of what their rule would create, right? Let's say I created my first Google account in 2008. I represented a client suing Google in 2010. Under their theory, I would not have been able to do so because by creating the account in my personal capacity and not opting out, but why would I? Because I wasn't investigating on behalf of anyone else at the time. I therefore would be unable to bring litigation against Google at any time. Ever. And if any member of the legal team were in that scenario, Google would be able to bring this argument and say, well, the client's bound to arbitration, even if that client is Samsung. All right, I have two minutes and 30 seconds left, so I'd like to talk about Communications Decency Act. So first, this court does not have jurisdiction to review the 12B6 order, right? The issue that's on appeal here is a narrow one. Interlocutory appeal is limited. That's from Will v. Halleck. That's from the Final Judgment Rule. That's from SWINT, all of which is cited in our briefing. And they have the right to interlocutory appeal the denial of a motion to compel arbitration. They do not have the right to appeal the denial of a 12B6 motion, and we know that because the CDA motion is intertwined with the merits. Will v. Halleck, a motion that... or an issue that is intertwined with the merits cannot be interlocutorily appealed, right? There also has to be a final decision for appeal to be available on that issue. Here, the district court's ruling on the Communications Decency Act not only wasn't a final... it was not even close to a final decision because all the district court said was, for purposes of the pleading stage, they've not shown that the Communications Decency Act applies. They probably will still assert that as the case goes forward. And... Do repeat what you just said because you're not speaking into the microphone and I'm having difficulty following what you just said. Apologies. I'm saying that their attempt to appeal the district court's decision on the Communications Decency Act fails all of the standards for interlocutory review. There's no final judgment on that issue. Therefore, it's not properly before this court. And I was then walking through the standards of Will v. Halleck and saying that none of those standards are met here. It's not a final judgment. It's deeply intertwined with the merits, and then under Swint, the only way they could be bringing this issue up is if it's inextricably intertwined with the motion to compel arbitration. They admit in their own briefing the two issues are completely separate and can be resolved separately. There's nothing about the Communications Decency Act issue that implicates or even touches on the question of whether there's a contract between my client and... You've answered me. Sorry? I've answered you. Thank you. Finally, on the... Should this court reach the substance of the Communications Decency Act question, I'll start by noting that 14 district courts have rejected their argument, and then there are two primary reasons why the Communications Decency argument doesn't work for them. But I'll start by noting, overall, the Communications Decency Act is intended to protect websites that host user-generated content. The point is that a website shouldn't be held liable for content that someone else chose to post on the website. PeopleConnect does not host user-generated content. No one's posting these yearbooks willingly. Counsel, you're out of time. Do you want to make a final point? No, sir, I believe I've said everything I wish to say. All right, thank you. Counsel, you have some time left for rebuttal. Thank you, Your Honor. I'll be very brief. First, just to state the obvious, the assertions about when the relationship started, who's visited what, there's no declaration on that. None of that is in the record, and even if there were, we'd be entitled to discovery. And just to put just a fine point on Justice Thomas' question about the use of, Judge Thomas' question about the use of the other PeopleConnect sites, the earlier complaint in this case was filed on behalf of Mr. Fry. He alleged in the complaint that he hadn't used the PeopleConnect service. Once we got into it, it became clear that actually he had used the PeopleConnect service, notwithstanding the allegation in the complaint to the contrary, and Mr. Fry was substituted out and Mr. Bruchier was brought in. So this is not some fantasy about, like, if we get discovery, we actually learn things about who used what, when, when the relationship started. Second, just very briefly on Callahan. Callahan, of course, was California law, an unpublished decision that predated this Court's published decision in Napke dealing with Washington law on the same exact question from the same exact judge. Third, Judge Bea, your two arrows point is exactly correct. We have two arrows in the quiver. We have a ratification one. We have an implied authority one. Both of those were at issue in Napke. We get discovery on both. It doesn't seem like the Court is inclined to go to the Communications Decency Act, but if it were to rule against us on arbitration, I just want to make crystal clear, you have jurisdiction. In fact, it is not a swint case or an appendant appellate jurisdiction. This is a core. The Arbitration Act says the order is appealable. It is in a single order from the District Court. There was a single motion to dismiss under Rule 12. So if there were two orders on the same day, then you'd be out of luck? So I think two orders is different and more complicated. It's clear there is one order here, and the reason for that is that, and the District Court said there is only one order. She keeps referring to it as this order, and that's the Yamaha case. That is the Mayor and City of Baltimore case, and that is the Donaldson case from the Eighth Circuit which dealt with the Arbitration Act, and that's the Mackey case from the Seventh Circuit where we just went through this with, not with Mr. Osborne, but one of his co-counsel on the brief where we filed an appeal from a motion very much like this. The plaintiffs dismissed the underlying case, so the appeal was mooted. In order to send it back, we asked for a Munsingwear vacatur of the whole thing, both the arbitration provision and the motion dismissed. They said you can't do that. Are there any limits as to what the second topic could be? As long as it's in the same order? So that's a fair question, and I think it might be complicated. I don't think that is it approached here where... So I think the text says no is the response to that. If it's a single order, the text of the Arbitration Act says the order is appealable. Here we're not close to the boundaries because it was a single Rule 12 motion. The judge... So I deny the motion to compel arbitration, and I grant your motion to appear pro hack vicee? So it's a fair question, Your Honor. I think the answer... My answer is going to be yes because the text of the statute is the text, but, of course, Your Honor doesn't have to decide that here because what we're talking about here are different grounds under Rule 12 for one is... And we filed a Rule 12 motion, and so one had arbitration and one doesn't. But Your Honor is probing the outsides, outer edges. I want to make clear that Donaldson addressed this. What was at issue in Donaldson was a motion to compel arbitration and then a separate motion to strike class allegations in the complaint, and the Eighth Circuit said, of course we have jurisdiction. It's within the same order. Mackey is exactly the same. The Seventh Circuit dismissed the entire... Vacated, excuse me, vacated the entire district court decision, both the motion to compel and the merits, because the courts understand that those are sensibly part of the same order. But if Your Honor's asking me to answer your question directly, the text is the text. A single order comes up, and that's what the court said in Yamaha. That's what the court said in Mayor and City of Baltimore. That's what the Eighth Circuit said in Donaldson. But then I'll just close, Your Honor, with the policy arguments. Of course, Your Honor is not missing anything. The opt-out provision is there. It prevents the parade of horribles. And I think, actually, the parade of horribles, or at least the policy argument that I just want to close on, because it's the one that really troubles us, is nobody disputes that Mr. Boshears would be bound if he had gotten on the website and did the exact same search that the attorney did, and that he would be bound to the terms of service. What's happened here is that he's trying to get around that by having his attorney do it for him and get all of the information, get all of the access to the site, and say, but I'm not bound by the contract. We think that is exactly what this agent-principal argument is getting at, and that's the policy decision. But policy aside, we think Napke fully controls and disposes of the case. All right. We thank counsel for their arguments. The case just argued is submitted, and with that we are adjourned. Thank you. All rise.
judges: BEA, BENNETT, THOMAS